UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JOSEPH R. BARNTHOUSE, M.D. and DOROTHY BARNTHOUSE,  )<br>)<br>Plaintiffs,  )<br>)<br>vs.  )<br>)<br>WILD DUNES RESORT, L.L.C., )<br>DESTINATION HOTELS AND )<br>RESORTS, INC., and LOWE )<br>ENTERPRISES, INC., )<br>)<br>)<br>Defendants.  )<br>_____ ) | Case No. 2:08-cv-2546-PMD<br><br><br><br>**MOTION TO EXCLUDE**<br>**OR IN THE ALTERNATIVE**<br>**LIMIT THE TESTIMONY OF**<br>**D. VINCENT RHODES, M.D.** |

Plaintiffs, by and through their undersigned attorneys, hereby request this Court grant an Order excluding the testimony of D. Vincent Rhodes, M.D., pursuant to Federal Rules of Civil Procedure Rules 26(a)(2)(C) and 37(c)(1), on the grounds that Defendants failed to timely identify Dr. Rhodes as an expert witness in compliance with the scheduling order of this case. In the alternative, Plaintiffs request that any testimony of Dr. Rhodes be limited strictly to the scope of his designation by Defendants as an alleged expert qualified in the area of medical billing practices.

This is a personal injury case wherein the Plaintiffs and their family took a vacation to Wild Dunes Resort in July 2005. Dr. Barnthouse is a successful and well-regarded plastic surgeon from Kansas whose downtime is infrequent, and very important and valuable to him and his family. On Monday July 25, 2005, their second full day at the resort, Dr. Barnthouse went to the Sand and Sea Salon at the resort and treated himself to a hot stone massage- something his

wife arranged for him that he had never done before. The massage was administered by Miriam S. Joyner. During the hot stone massage, he complained three times that the stones were too hot. This, combined with grossly improper and unsafe techniques utilized by Ms. Joyner, Dr. Barnthouse was seriously burned on his upper back, lower back and right groin. As a result of his burns his vacation was ruined, he required treatment for his burns for a period of approximately two months, endured surgical procedures to treat the burns, lost substantial income due to cancelled procedures/reduced workload, experienced serious pain and suffering, and has permanent scarring. His wife experienced a loss of consortium.

Defendants signed and consented to a (third) Consent Scheduling Order in this matter on August 13, 2009. (See Exhibit A, Third Amended Consent Scheduling Order) This Order required Defendants to identify any expert witness that they intended to call at the trial of this case by October 14, 2009. Additionally, discovery was to be completed by December 14, 2009. To date, there has been no form of consent or stipulation between the parties as to any extension of either of those deadlines. Despite this, the Defendants disclosed for the first time on June 4, 2010 the identity and anticipated testimony of D. Vincent Rhodes, M.D., a purported expert to address the reasonableness of the medical bills submitted by Dr. Barnthouse. (See Exhibit B, Defendants' Supplemental Rule 26(A)(2)(B) Identification of Experts with CV). Plaintiffs were not provided his expert report until June 9, 2010. (See Exhibit C, June 8, 2010 Letter from Dr. Rhodes to Jim Scott). In fact, Defendants did timely file a disclosure of experts on October 14, 2009- they had none. (See Exhibit D, Defendants'' Rule 26(A)(2)(B) Identification of Experts).

The parties participated in mediation on March 1, 2010. It was at this juncture that Plaintiffs learned that the Defendants, despite having knowledge of the extent of the injuries suffered and treatment rendered, valued the case drastically differently than the Plaintiffs in large

part to not having physical medical bills. Consequently, on March 12, 2010, admittedly outside of the discovery deadline, Plaintiffs produced actual medical bills to the Defendants which merely quantified *the value* of the treatment rendered. Defendants waited nearly three months later, and approximately one month prior to trial, to designate an expert to address the reasonableness of the those charges.

Rule 26(a)(2)(C) mandates that all expert witness must be identified in compliance with any court order. Moreover, Rule 37(c)(1) clearly establishes that the failure to identify an expert witness in accordance with Rule 26 prohibits the testimony of that witness in any fashion. A recent case excluding an expert for an untimely designation noted that a scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Mainfreight USA Partnership v. Marco, 2010 WL 1071730, 2 (D.S.C. 2010)(internal citations omitted). Despite the court order, Defendants failed to provide any notice of Dr. Rhodes until eight months after the deadline had passed. Therefore, the disclosure of Dr. Rhodes as an expert in this is case is untimely and he should be excluded as an expert.

In addition to the untimely designation, Dr. Rhodes should be excluded as an expert because he is not qualified. Rule 702, FRE provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of the opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. The "basic gate keeping obligation" identified by the Supreme Court in Daubert and now embraced by Rule 702, FRE applies not only to scientific testimony, but to all expert testimony.

Kumho Tire Company v. Carmichael, 526 U.S. 137 (1999).

Before a witness may be permitted to provide expert testimony, he must be qualified as an expert. Thompson v. Queen City, Inc., 2002 WL 32345733 (D.S.C. 2002). An expert is one whose opinion is helpful to the trier of fact because the expert draws on some special skill, knowledge, or experience. Id.  Neither Dr. Rhodes' report nor his curriculum vitae identify any expertise or qualification in medical billing.  In fact, per his own report Dr. Rhodes has only been asked to serve as an expert four or five times (and has testified in none), in medical malpractice cases. (Ex. C).  Dr. Rhodes' purported area of expertise is medical billing practices- he's not being asked to review this matter for possible negligence of a medical care provider.  There is nothing in his report or CV that would establish that Dr. Rhodes has the requisite skill, training, knowledge or experience to serve as an expert in the area of the reasonableness of medical bills.  What's more, there is nothing that indicates Dr. Rhodes, a family practitioner in the small town of Beaufort, SC, has any experience- much less qualification- to render an opinion regarding the reasonableness of medical bills and billing practices of a plastic surgeon who practices in a large metropolitan city halfway across the country.  Therefore, in addition to his late designation, Dr. Rhodes should be excluded as an expert because he is not qualified.

In the alternative, any testimony by Dr. Rhodes should be limited in scope specifically to the areas for which Defendants' designated him.  Defendants have offered Dr. Rhodes solely as a rebuttal witness to address the reasonableness of the medical bills in this case- more specifically his opinions will address the "inappropriate nature of the medical bills submitted by Plaintiff as a basis for his damages claim." (Ex. B).  Dr. Rhodes's expert report does indeed opine about the charges and billing practices in this

case; however, Dr. Rhodes' written report also contains specific medical opinions in regards to the treatment of Dr. Barnthouse's injuries and the appropriateness of self-treatment. (Ex. C). Dr. Rhodes states that it is "generally not considered acceptable- in fact, it is not even considered ethical- for a physician to treat himself or a family member except in cases of emergency. I would be concerned at the ongoing self treatment by Dr. Barnthouse." (Ex. C, No. 1). Dr. Rhodes has not been offered as an expert in medical ethics or as an ethicist, and this opinion does not address the appropriateness of the medical bills in this case. Defendants have been on notice since the onset of the case that Dr. Barnthouse, with the assistance of his wife, a registered nurse, handled the lion's share of the treatment for his burns. During his deposition on August 10, 2009, months before the deadline for Defendants to designate experts, Dr. Barnthouse was questioned extensively about how he treated his own burns. There has been nothing new revealed by production of the medical bills, other than the cost of services, that would change the Defendants' knowledge or grounds to challenge the appropriateness of Dr. Barnthouse self-treating his burns long after the deadline to do so has passed. As such, Dr. Rhodes' opinion regarding the ethical appropriateness of Dr. Barnthouse treating his own burns are outside the scope of his designation as an expert and should be excluded.

Similarly, Dr. Rhodes states that it his "belief that these wounds likely could have been taken care of with once daily visits to the physician for the first week to ten days and then once weekly to ensure resolution and healing. Dressing changes could have been done by nursing." (Ex. C, No. 4). This purported expert opinion also extends past the designated area of expertise of Dr. Rhodes. His opinion about the actual treatment itself constitutes medical opinion not related to the billing, but rather to the actual

treatment rendered. Moreover, there is no justification to allow the Defendants to introduce medical expert testimony at this stage of the case, when the treatment rendered to Dr. Barnthouse was clearly revealed in his deposition. Had the Defendants deemed the actual treatment rendered to be worthy of a challenge by expert opinion, they had ample opportunity to do so within the deadline set by the Court. In fact, the bills provide no detail to the treatment rendered that could possibly support Defendants' attempt at a late challenge to the medical or ethical appropriateness, in that they only identify "Patient Consult" and "Treatment of Burns" as the services provided. (See Exhibit E, Medical Bills Provided to Defendants on March 12, 2010). Because the production of the medical bills, admittedly beyond the discovery deadline, did not reveal anything new regarding the duration or actual treatment provided for Dr. Barnthouse's serious burns, the testimony of Defendants' expert, should it be allowed, *should be limited only to the appropriateness of the medical bills, not the medical treatment itself.*

Defendants' designation of Dr. Rhodes as an expert is untimely and should be excluded. In the alternative, should his testimony be allowed it should be limited to the actual subject to which he was designated as an expert. If Defendants are allowed to call this witness as an expert at this stage of the case, Plaintiff would be severely prejudiced in their preparation for the trial of this case. Accordingly, Plaintiffs respectfully ask that this Court grants its Motion to Exclude the Testimony of D. Vincent Rhodes, M.D., or in the alternative, to limit any such testimony to the scope of his designation.

Signature follows

BARNWELL WHALEY
PATTERSON & HELMS, LLC

s/ John A. Jones (Fed. I.D. No. 9479)
Randell C. Stoney, Jr. (Fed. I.D. No. 4333)
John A. Jones (Fed. I.D. No. 9479)
885 Island Park Drive (Zip: 29492)
P.O. Drawer H
Charleston, SC 29402
(843) 577-7700
rstoney@barnwell-whaley.com
jjones@barnwell-whaley.com

ATTORNEYS FOR THE PLAINTIFFS
JOSEPH R. BARNTHOUSE, M.D., and
DOROTHY BARNTHOUSE

June 17, 2010
Charleston, South Carolina